IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


KENNETH E. RELEFORD, JR.                                                    PLAINTIFF

                    v.                          Civil No. 11-2160

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                              DEFENDANT

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I.      Factual and Procedural Background

Plaintiff, Kenneth L. Releford, Jr., brings this action seeking judicial review, pursuant to 42

U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration

("Commissioner") denying his application for supplemental security income ("SSI") under Title XVI

of the Social Security Act ("the Act").

Plaintiff protectively filed his application on August 18, 2008, alleging a disability onset date

of July 21, 2008, due to Crohn's disease,[1] depression, anxiety, and anemia.  Tr. 12, 181.  On the

application date, Plaintiff was twenty-seven years old with an eleventh grade education.  Tr. 17, 37,

187.  He has no past relevant work.  Tr. 17.

Plaintiff's applications were denied at the initial and reconsideration levels.  Tr. 70-75.  At

Plaintiff's request, an administrative hearing was held on March 5, 2010.  Tr. 30-61.  Plaintiff was

present at this hearing and represented by counsel.  The ALJ rendered an unfavorable decision on

---

[1] "Crohn's disease is a chronic transmural inflammatory disease that usually affects the distal ileum and colon but may occur in any part of the GI tract.  Symptoms include diarrhea and abdominal pain.  Abscesses, internal and external fistulas, and bowel obstruction may arise."  THE MERCK MANUAL OF DIAGNOSIS AND THERAPY 169-172 (Robert S. Porter, M.D., et al., eds., 19th ed. 2011).

May 28, 2010, finding Plaintiff was not disabled within the meaning of the Act.  Tr. 7-19.

Subsequently, the Appeals Council denied Plaintiff's Request for Review on July 11, 2011, thus

making the ALJ's decision the final decision of the Commissioner.  Tr. 1-6.  Plaintiff now seeks

judicial review of that decision.

II.      **Medical History**

Plaintiff has a history of Crohn's disease and chronic urinary tract infections.  On June 24,

1998, Plaintiff underwent an exploratory laparotomy with ileocolectomy and primary ileo-ascending

colostomy, closure of enterovesicular and enterocolonic fistulae, and drainage of sacral

osteomyelitis.  Tr. 580-642.  On October 8, 1998, Plaintiff underwent enterostomy closure with

resection, which he tolerated well.  Tr. 601, 603-604.

Plaintiff was treated at Sparks Regional Medical Center ("Sparks") for Crohn's flare-ups and

recurrent urinary tract infections on the following dates: November 10, 2006; July 25, 2008; August

2, 2008; August 6, 2008; August 14, 2008; August 22, 2008; January 8, 2009-January 16, 2009;

April 17, 2009; April 24, 2009; June 18, 2009; August 24, 2009; November 27, 2009; and December

1, 2009-December 21, 2009.  Tr. 250-317, 391-549.  On July 25, 2008, Plaintiff presented to Sparks

Regional Medical Center with complaints of periumbilical and right lower quadrant abdominal pain

with some nausea, vomiting, and diarrhea.  Tr. 250-265. On examination, Plaintiff's abdomen was

soft and non-distended.  Tr.  260.  Bowel sounds were normal, although Plaintiff had mild

generalized tenderness with no guarding or rebound.  Tr. 260.  A CT of Plaintiff's abdomen, with

contrast, revealed minimal basilar atelectasis, a dilated inflamed tubular structure within the right

lower quadrant, associated 1cm or calcification, moderate abnormal free fluid, surrounding

inflammatory changes, and additional thickening involving the descending/sigmoid colon, which was

consistent with a Crohn's exacerbation involving the distal small bowel. Tr. 260, 264-265. Plaintiff was discharged the same day with prescriptions for Metronidazole, Promethazine, Acetaminophen-hydrocodone, and Ciprofloxacin. Tr. 261.

Plaintiff was treated on August 2, 2008, for colitis and abdominal pain. 266-278. An acute abdominal series indicated small bowel ileus versus early small bowel obstruction. Tr. 278. On August 6, 2008, and August 14, 2008, Plaintiff was treated for dysuria and a urinary tract infection. Tr. 279-299. On August 22, 2008, Plaintiff was treated for generalized abdominal pain. Tr. 300-317. Abdominal x-rays revealed a nonspecific bowel gas pattern, but no other abnormalities. Tr. 308, 317. Plaintiff's prior bowel distention had resolved and there were no discrete fluid collections, soft tissue masses, or pathologic calcifications. Tr. 317. Plaintiff was assessed with abdominal pain of unknown cause and discharged with prescriptions for Acetaminophen-hyrdocodone and Ranitidine. Tr. 314. He returned to the emergency room on August 24, 2009, with complaints of lower left quadrant pain, diarrhea, and trouble with urination. Tr. 391-393. Plaintiff was treated for abdominal pain and discharged with prescriptions for Prednisone, Cipro, and Lorcet Plus. Tr. 392.

On October 7, 2008, Plaintiff underwent a mental diagnostic evaluation with Kathleen M. Kralik, Ph.D. Tr. 337-344. Plaintiff reported a history of depression, social isolation, poor sleep, learning problems, attention-deficit/hyperactivity disorder ("ADHD"), suicidal ideation, and talking to an "imaginary friend." Tr. 337-338. He was taking no prescription medication due to financial limitations. Tr. 338. Plaintiff had six felony arrests and convictions for possession of marijuana, but denied any current use. Tr. 338-339.

On examination, Plaintiff was not cooperative and appeared to be feigning mental illness in a variety of ways.  Tr. 339.  Mood and affect were normal and appropriate.  Tr. 339.  Plaintiff reflected a capacity for logical, organized, and goal-directed thinking, though he often acted as if he was somehow confused.  Tr. 339.  He alleged suicidal ideation, but repeatedly denied intent.  Tr. 339.  Dr. Kralik estimated Plaintiff's intelligence to be low average and noted that problems with processing speed, efficiency, and accuracy seemed exaggerated or feigned.  Tr. 339.

Dr. Kralik found that malingering of mental issues and exaggeration of difficulties was clearly evident.  Tr. 337.  She diagnosed Plaintiff with cannabis dependence, allegedly in sustained full remission, ADHD, combined type (provisional), with associated learning skills issues, chronic dysthymia, malingering/exaggeration of more severe mental symptoms (provisional), and personality disorder not otherwise specified (with avoidant and passive-aggressive features at minimum and likely parasitic/antisocial, narcissistic, and/or histrionic features).  Tr. 342.  Dr. Kralik estimated Plaintiff's Global Assessment of Functioning ("GAF") score at 45-55.  Tr. 342.  She found that Plaintiff's capacity to carry out activities of daily living and communicate in an intelligible and effective manner was generally adequate for occupational purposes.  Tr. 342-344.  However, she noted that Plaintiff's capacity to communicate and interact in a socially adequate manner, cope with the typical mental/cognitive demands of basic work-like tasks, attend and sustain concentration on basic tasks, sustain persistence in completing tasks, and complete work-like tasks within an acceptable time frame was impaired for occupational purposes.  Tr. 342-344.

In a Psychiatric Review Technique Form ("PRTF") dated October 15, 2008, Winston Brown, Ph.D., considered Listings 12.02 (organic mental disorders), 12.04 (affective disorders), 12.08 (personality disorders), and 12.09 (substance addiction disorders), but determined Plaintiff's

symptoms did not meet or equal the criteria of a listing.  Tr.  355-368.  Dr.  Brown found mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation, each of extended duration.  Tr.  365.  In a Mental Residual Functional Capacity ("RFC") Assessment, Dr.  Brown determined Plaintiff was moderately limited in his ability to maintain attention and concentration for extended periods, carry out detailed instructions, sustain an ordinary routine without special supervision and without being distracted by others, complete a normal workday and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others.  Tr.  369-372.  Dr.  Brown determined Plaintiff was not significantly limited in all remaining work-related categories and had the RFC to perform unskilled work.  Tr.  371.

On October 30, 2008, Wheatley Beard, M.D., completed a Physical RFC Assessment, in which he found Plaintiff could occasionally lift/carry ten pounds, frequently lift/carry less than ten pounds, stand and/or walk for at least two hours in an eight-hour workday, sit for a total of about six hours in an eight-hour workday, and push/pull an unlimited amount, other than as shown for lift/carry.  Tr.  347-354.  Dr.  Beard found no postural, manipulative, visual, communicative, or environmental limitations.  Tr.  349-351.

On January 8, 2009, Plaintiff was admitted to Sparks with severe abdominal pain and a urinary tract infection.  Tr.  427-469.  A CT of Plaintiff's abdomen and pelvis revealed findings consistent with a small bowel obstruction with thickening of the terminal ileum.  Tr.  428, 466-467.

A cytoscopy revealed an enterovesicular fistula.  Tr.  428, 458, 461-462.  A colonoscopy revealed multiple tight strictures throughout the colon secondary to Crohn's disease and a very tight stricture at the ileocolonic anastomosis in the right colon.  Tr.  458-460.  Biopsy results showed active colitis. Tr.  464-465.  Plaintiff was treated with IV Levaquin, Solu-Medrol, and Flagyl.  Tr.  428, 436, 443. Hrair  Simonian, M.D., did not recommend surgery at the time, but noted the possibility of future surgery.  Tr.  428.  Plaintiff was discharged on January 16, 2009, in stable condition.  Tr.  428.

On June 18, 2009, Plaintiff was treated at Sparks for hematuria.  Tr.  394-399.  On examination, Plaintiff's abdomen was moderately tender, but soft and non-distended with normal bowel sounds.  Tr.  395.  Plaintiff's hemoglobin and hematocrit levels were low, indicating anemia. Tr.  396.  Plaintiff was diagnosed with an enterovesicular fistula secondary to Crohn's disease.  Tr. 397, 406-407.

On November 27, 2009, Plaintiff was treated for severe abdominal pain, nausea, vomiting, and dysuria with blood, air, and stool in his urine.  Tr.  502-521.  On examination, Plaintiff's abdomen was very tender to palpation in the right lower quadrant and suprapubic area, with significant guarding and rebound tenderness.  Tr.  508.  Urinalysis showed signs of urinary tract infection and CT imaging of Plaintiff's abdomen revealed right pelvis inflammatory process with thickening of the terminal ileum and air going into the bladder.  Tr.  507-508, 515-516, 544-545. Dr. Simonian noted that Pentasa had not been effective in closing the fistula and recommended surgical repair.  Tr. 518-520.  He also noted that Plaintiff would need to take Pentasa indefinitely due to recurrence of the Crohn's virus and to prevent any further fistula formations.  Tr. 520.

On December 1, 2009, Plaintiff was admitted to Sparks with complaints of severe right lower quadrant abdominal pain, inflammatory bowel disease versus appendicitis, hypokalemia, and a

urinary tract infection secondary to enterovesicular fistula.  Tr.  499-501.  On December 4, 2009, Plaintiff underwent exploratory laparotomy with repair of enterovesicular fistula, redo of ileocolic anastomosis, and lysis of adhesions, which he tolerated well.  Tr.  499-500, 522-524.  Plaintiff was discharged on December 21, 2009, with prescriptions for Vesicare, Lortab, and Pentasa.  Tr.  500.

From September through November 2009, Plaintiff received routine treatment at Good Samaritan Clinic for dysuria, urinary tract infections, prostatitis, and Crohn's disease.  Tr. 550-579. Robert Barker, M.D., treated Plaintiff with Pentasa, Flagyl, Mercaptopurine, Prednisone, Methadone, Cipro, and Flomax.  Tr. 561.

On October 1, 2009, Dr.  Barker completed a Medical Source Statement, in which he found Plaintiff could sit continuously for thirty minutes and for a total of four hours in an eight-hour workday, stand continuously for fifteen minutes and for a total of three hours during an eight-hour workday, walk continuously for thirty minutes and for a total of one hour in an eight-hour workday, and stand/walk for a combined total of one hour in an eight-hour workday.  Tr.  388-390.  He also determined Plaintiff could occasionally lift and/or carry up to ten pounds, operate foot controls with both feet, and perform simple grasping and fine manipulation, but could do no pushing and pulling. Tr. 389.  Dr.  Barker found Plaintiff could occasionally bend, squat, crawl, climb, reach above his head, stoop, crouch, and kneel, and could occasionally tolerate unprotected heights, moving machinery, marked temperature changes, driving automotive equipment, and exposure to dust, fumes, gases, and noise.  Tr. 389.  He further noted that Plaintiff experienced moderate to severe pain, would sometimes need unscheduled breaks, and would likely miss more than four workdays per month.  Tr.  390.

On July 9, 2010, following the ALJ's decision, Dr. Barker completed an affidavit stating the following:

> I have been following Mr. Releford for treatment for his Crohn's Disease for quite sometime. He has had his bowel resectioned and had a colostomy. He had another procedure to reverse the colostomy. Objective testing has shown rectal fistulas along with multiple strictures. More objective testing, in the form of CT scans, showed fluid levels consistent with small bowel obstruction which required surgery. I anticipate he will need additional surgeries in the future for this chronic problem which I anticipate will plague him for the rest of his life. There is no way that this gentleman is medically cleared or capable of working eight (8) hours per day, five (5) days per week, fifty (50) weeks per year at any level, even sedentary. This is my medical diagnosis based upon objective medical fact.

Tr. 246-247.

### III.   Applicable Law

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that he is unable to engage in any substantial gainful activity due to a medically determinable physical

or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A).   The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits his physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform his past relevant work; and (5) if the claimant cannot perform his past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given his age, education, and work experience.  *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a).  If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled.  *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

## IV.    ALJ's Determination

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point since August 18, 2008, the application date. Tr. 12.  At step two, the ALJ found Plaintiff suffers from Crohn's disease, anemia, ADHD, dysthymia, and personality disorder, all of which were considered severe impairments under the Act.  Tr. 12.  At step three, he determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  Tr. 12-14.

At step four, the ALJ found Plaintiff had the RFC to lift and carry ten pounds occasionally and less than ten pounds frequently, sit for about six hours in an eight-hour workday, stand and walk

for at least two hours in an eight-hour workday, understand, remember, and carry out simple, routine, and repetitive tasks, and respond appropriately to supervision, coworkers, and usual work situations, with only occasional contact with the general public.  Tr. 14-17.

The ALJ found Plaintiff had no past relevant work.  Tr. 17.  However, after receiving vocational expert testimony, he found jobs existing in significant numbers in the national economy that Plaintiff could perform.[2]  Accordingly, the ALJ determined Plaintiff was not under a disability from August 18, 2008, the application date, through May 28, 2010, the date of the administrative decision.  Tr. 19.

## V.    Discussion

On appeal, Plaintiff contends the ALJ erred by: (1) failing to properly account for his mental and physical limitations; (2) improperly discounting his subjective complaints; (3) failing to identify jobs existing in significant numbers in the national economy that he could perform; and (4) failing to consider the combined effect of his mental impairments.  *See* Pl.'s Br. 13-19.  For the following reasons, the court finds that substantial evidence does not support the ALJ's decision.

The ALJ improperly dismissed Dr. Barker's RFC Assessment.  A treating physician's opinion is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in a clamant's record.  *Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009); 20 C.F.R. § 404.1527(d)(2).

---

[2] The ALJ determined Plaintiff could perform the requirements of representative occupations such as production workers, helpers, and laborers, classified as light and unskilled, of which there are 450 jobs in Arkansas and 13,264 jobs nationally that are performed at the sedentary level, assembly worker, production, classified as light and unskilled, of which there are 200 jobs in Arkansas and 11,000 jobs nationally that are performed at the sedentary level, hand packager, classified as medium and unskilled, of which there are 325 jobs in Arkansas and 32,300 jobs nationally that are performed at the sedentary level, and escort vehicle driver, classified as sedentary and unskilled, of which there are 200 jobs in Arkansas and 25,700 jobs nationally.  Tr. 18, 57-61.

The record must be evaluated as a whole to determine whether the treating physician's opinion should be controlling.  *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005).  A treating physician's evaluation may be disregarded where other medical assessments "are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions."  *Id.* at 920-21 (quoting *Prosch*, 201 F.3d at 1013).  In any case, an ALJ must always "give good reasons" for the weight afforded to the treating physician's opinion.  20 C.F.R. § 404.1527(d)(2).

> Regarding Dr. Barker's RFC Assessment, the ALJ stated:
>
> The undersigned has considered the opinion of Dr. Robert Barker dated October 1, 2009 (Exhibit 17F).  However, the undersigned does not give this opinion controlling weight.  First, Dr. Barker's opinion is internally inconsistent.  Dr. Barker stated that the claimant can stand a total of three hours in an eight-hour workday and walk a total of one hour in an eight-hour workday but then stated that he can stand/walk for a combined total of one hour in an eight-hour workday.  Second, Dr. Barker had apparently only seen the claimant a couple of times when he completed the medical source statement.  Third, Dr. Barker reported that the claimant had a rectal fistula and small bowel obstruction, but subsequent records show that the claimant underwent fistula repair in December 2009, and there is no evidence that the claimant has required additional treatment since that time.

Tr. 17.

First, Dr. Barker's notation that Plaintiff could stand for a total of three hours in an eight-hour workday, walk for a total of one hour in an eight-hour workday, and stand and walk for a combined total of one hour in an eight-hour workday is not internally inconsistent.  Dr. Barker simply notes that the cumulative effect of standing and walking would limit Plaintiff to one hour in an eight-hour workday, the same amount of time he found for walking alone.  This is not erroneous or inconsistent.

Additionally, the ALJ dismissed Dr. Barker's opinion because he had "apparently only seen the claimant a couple of times."  Tr. 17.  Review of the medical records from Cornerstone Clinic

show that Plaintiff was treated at least six times prior to Dr. Barker's October 1, 2009 RFC Assessment.[3] 20 C.F.R. § 404.1527(c)(2)(i)-(ii) (ALJ will consider the length, nature, and extent of treating relationship). As Plaintiff's primary care physician, Dr. Barker was in the best position to provide a complete and comprehensive assessment of Plaintiff's functional limitations. Morever, Dr. Barker was the *only* treating or examining physician to complete a physical RFC assessment. Disregarding his assessment left no other medical opinion in the record except the RFC assessments completed by non-treating, non-examining agency physicians, which were performed approximately a year prior to Plaintiff's December 2009 surgery. *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) ("the assessment of a doctor who evaluates a claimant once or not at all does not usually constitute substantial evidence."); *see also Haley v. Massanari*, 258 F.3d 742, 749 (8th Cir. 2001) (reversible error for ALJ not to order consultative examination where such evaluation is necessary to make informed decision) (quoting *Boyd v. Sullivan,* 960 F.2d 733, 736 (8th Cir. 1992)).

Finally, the fact that Plaintiff did not seek treatment between December 21, 2009, and March 5, 2010, the date of the administrative hearing, does not imply that he no longer experienced severe limitations. Plaintiff's twelve emergency room visits between July 25, 2008, and December 21, 2009, including his December 4, 2009 surgery, objectively demonstrate the frequency and severity of his Crohn's flare-ups. For these reasons, the court finds that the ALJ erred in his RFC determination.

The undersigned finds that substantial evidence does not support the ALJ's decision and recommends remand for further development of the record concerning Plaintiff's physical limitations. This matter should be remanded to the Commissioner for reconsideration of the issue

---

[3] Plaintiff was treated on the following dates: September 3, 2009; September 8, 2009, September 11, 2009; September 17, 2009; September 28, 2009; and October 1, 2009.  Tr. 550-579.

of Plaintiff's RFC, based on all relevant evidence, including medical records, opinions of treating medical personnel, and Plaintiff's description of her own limitations. *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001). On remand, the ALJ should reconsider Dr. Barker's opinion, including his July 9, 2010 affidavit, which was completed after the administrative decision. The ALJ should provide specific reasons for the weight attached to Dr. Barker's opinion.

**VI.     Conclusion**

Based on the foregoing, the undersigned recommends reversing the decision of the ALJ and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **The parties have _fourteen_ days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 25th day of June 2012.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE